IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EVANSTON INSURANCE CO.,

    Plaintiff,

  v.

OEA, INC., and DOES 1-20, inclusive,

    Defendants.

OEA, INC.,

    Counterclaimant,

  v.

EVANSTON INSURANCE CO., et al.,

    Counterdefendants.

CIV-S-02-1505 DFL PAN

MEMORANDUM OF OPINION AND ORDER

Counterdefendants Certain Underwriters at Lloyd's, et al. ("Lloyd's") move for partial summary judgment on counterclaimant OEA, Inc.'s ("OEA") claim that Lloyd's breached the covenant of good faith and fair dealing. OEA opposes the motion and requests a continuance under Fed. R. Civ. P. 56(f). For the reasons discussed below: (1) Lloyd's motion is GRANTED in part and DENIED in part; and (2) OEA's request for a continuance is DENIED.

## I.

This insurance coverage action arises out of two accidents that occurred at the OEA Aerospace plant in Fairfield, California. The court has already issued several lengthy orders and will not rehearse the facts here.

In June 2003, Lloyd's moved for summary judgment on the coverage issue. In September 2003, the court granted the motion, finding that OEA's two-year delay in notifying Lloyd's breached the terms of the insurance contract. Evanston Ins. Co. v. OEA, Inc., CIV-S-02-1505 DFL PAN slip op. at 34, 36 (E.D. Cal. Sep. 19, 2003) ("Evanston I"). Because Colorado followed the "notice standard" at the time, the court held that Lloyd's was not obligated to cover OEA's damages. Id. at 34.

However, on January 31, 2005, the Colorado Supreme Court changed Colorado law from a notice standard to a "notice-prejudice standard" for liability insurance contracts. Friedland v. Travelers Indem. Co., 105 P.3d 639, 647 (Colo. 2005). Under the notice-prejudice standard, an insurer must show that it was prejudiced by an insured's delayed notification before it can

2

deny a claim on the grounds of late notice. Id. Because Lloyd's had not shown prejudice before denying OEA's claim, OEA moved for reconsideration of the Evanston I decision. Evanston Ins. Co. v. OEA, Inc., CIV-S-02-1505 DFL PAN slip op. at 2 (E.D. Cal. Jul. 25, 2005) ("Evanston II"). In July 2005, the court found that the rule announced in Friedland applied retroactively and granted OEA's motion for reconsideration. Id. at 23.

Lloyd's now moves for partial summary judgment on OEA's breach of the covenant of good faith and fair dealing and punitive damages claims.

II.

Both sides agree that: (1) to prevail on its claim of bad faith, OEA must show that Lloyd's acted unreasonably; (2) a finding of bad faith is required before the court can award punitive damages; and (3) the reasonableness of Lloyd's decision to deny coverage must be evaluated as of the time it was made. (Mot. at 2, 7, 13; Opp'n at 1; Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co., 90 Cal.App.4th 335, 347 (2001).)

Lloyd's argues that, as a matter of law, it acted reasonably in denying OEA's claim because: (1) OEA failed to provide timely notice to Lloyd's; and (2) at the time that Lloyd's denied the claim, Colorado applied the notice standard for liability insurance policies. (Mot. at 2 (citing Marez v. Dairyland Ins. Co., 638 P.2d 286 (Colo. 1981).) In addition, Lloyd's alleges that OEA cannot pursue a claim of bad faith based solely on Lloyd's defensive pleadings in this litigation. (Reply at 7.)

3

OEA contends that Lloyd's denial was unreasonable because the notice standard was "in the process of being abandoned" at the time Lloyd's rendered its decision. (Opp'n at 1.)  OEA also argues that the court cannot grant Lloyd's motion in its entirety because: (1) Lloyd's entire course of conduct is subject to review for bad faith; and (2) Lloyd's continued denial of the claim after Colorado adopted the notice-prejudice standard for liability policies is unreasonable.  (Id. at 13-14.)

A.   Reasonableness of the April 18, 2001 Denial

OEA argues that Lloyd's denial of OEA's claim based on the notice standard was unreasonable in light of the Colorado Supreme Court's decision in Clementi v. Nationwide Mut. Fire Ins. Co., 16 P.3d 223 (9th Cir. 2001).  In Clementi, Nationwide Mutual Fire Insurance Company ("Nationwide") brought a declaratory judgment action against an insured to whom it had issued an uninsured motorist ("UIM") policy.  16 P.3d at 224.  Nationwide sought a determination by the court that it would not be responsible for covering the insured on a potential claim because the insured had failed to notify Nationwide in a timely fashion.  Id.  The trial court held that Nationwide was not required to show prejudice before denying coverage of a late-noticed claim.  Id.  The court of appeals affirmed, citing Marez.  Id.  The Colorado Supreme Court reversed.  Id.

While the court "expressly adopt[ed] the notice-prejudice rule in UIM cases," it explicitly refrained from applying this new rule to liability insurers.  Id.  In fact, throughout the

4

opinion, the court treats UIM and liability policies as subject to different legal rules. For example, even though courts of appeal had routinely cited Marez for many years to justify applying the notice standard to UIM cases, the Supreme Court held that Marez only applied to liability insurers. Id. at 225. As a result, it found that determining the correct standard for UIM claims was "a matter of first impression" in Colorado. Id.

In addition, the court stressed that certain policy concerns, unique to UIM cases, justified a notice-prejudice standard. The court noted that automobile insurance policies are the products of "unequal bargaining power" and that the Colorado legislature had stated that there is a significant public interest in compensating injured individuals. Id. at 229-30. Finally, to alleviate any confusion regarding the impact of Clementi on Marez, the court stated twice that Clementi did not overrule Marez. Id. at 224, 228 n.5.

OEA characterizes the case differently. It argues that Clementi provided a "reasonably apparent implication" that the Colorado Supreme Court would soon overrule Marez and establish the notice-prejudice standard as the rule in liability insurance cases. (Opp'n at 3.) To support its argument, OEA points to the language contained in footnote 5 of the opinion; the two Tennessee cases cited in that footnote; and a statement by the Colorado Supreme Court in Friedland, the case that overturned Marez in 2005.

Footnote 5 states in its entirety:

> We need not consider today whether our ruling in Marez continues to apply to liability insurance cases because this issue is not presented by the case at bar. Cf. Alcazar [v. Hayes, 982 S.W.2d 845, 856 n. 14 (Tenn. 1998)] (declining to decide whether the notice-prejudice rule should apply to a standard liability policy since the case before the court involved only a UIM policy); but see Am. Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 817 (2000) (applying notice-prejudice rule in a liability case sixteen months after Alcazar was decided). However, to the extent that the court of appeals has extended our holding in Marez to non-liability late-notice cases, see Estate of Rick Harry, 972 P.2d at 282; Shelter, 942 P.2d at 1373; Graton, 740 P.2d at 534; Emcasco, 678 P.2d at 1054, we disapprove.

Clementi, 16 P.3d at 228 n. 5.  Although this footnote intimates that the Colorado Supreme Court might reconsider Marez at some point in the future, it does not fairly suggest that Marez's demise was all but certain.

OEA's argument regarding the two Tennessee cases cited in the footnote is also unpersuasive.  In Alcazar, the Tennessee Supreme Court abandoned the notice standard for UIM cases.  In Hutchison, the court did the same for liability cases.  OEA contends that "[t]here was absolutely no reason" that the court would have referenced these cases unless "it was telegraphing its view concerning the future application of the notice prejudice rule to liability cases in Colorado."  (Opp'n at 6.)

OEA puts too much emphasis on the reference to these cases. The court cites them as support for its claim that it "need not decide today" whether Marez continues to govern liability cases. The two cases demonstrate that at least one other state chose to

6

change the standard for UIM cases while leaving liability cases subject to the traditional notice standard.  Therefore, contrary to OEA's assertion, the court had at least one alternate reason to cite these cases.

More importantly, law is what courts hold and legislators write.  Citizens are entitled to rely on the written word, not vague hints of possible future action.  If the Colorado Supreme Court intended to convey that it was unreasonable for liability insurers to rely on Marez's notice standard, as OEA asserts, then it was the duty of that court to overrule Marez.  It did not do so, and a "Cf." citation to two Tennessee cases in a footnote is no substitute.

Finally, in Friedland, four years after Clementi, the Colorado Supreme Court commented that "insurers and the legal profession did not mistake a reasonably apparent implication that the Clementi rationale would also apply to liability policies, despite Marez." 105 P.3d at 646.  OEA argues that this statement shows that a reasonable insurance company would not have relied on Marez after Clementi.  But a "reasonably apparent implication" is not tantamount to holding, particularly in a case that acknowledges, indeed stresses, the difference between liability and automobile insurance, and that throws out "hints" pointing in several different directions.

In sum, the court finds that it was reasonable for Lloyd's to conclude that Clementi did not change the notice standard that had traditionally applied to liability insurance policies.

Therefore, Lloyd's April 18, 2001 denial of OEA's claim was reasonable as a matter of law. Lloyd's motion is GRANTED as it relates to this denial.

B.  <u>Reasonableness of Lloyd's Actions After the Colorado Supreme Court Established a Notice-Prejudice Standard</u>

OEA argues that Lloyd's conduct after Colorado adopted the notice-prejudice standard has been unreasonable because Lloyd's continues to deny OEA's claim. (Opp'n at 14.) Lloyd's contends that OEA's argument is meritless because OEA cannot base its bad faith claim solely on Lloyd's pleadings. (Reply at 6 (citing <u>Cal. Physicians' Serv. v. Super. Ct.</u>, 9 Cal.App.4th 1321, 1330 (1992).)

In California, an insured can introduce evidence of the insurer's conduct during the litigation to support a claim of bad faith, but the claim cannot be based exclusively on the insurer's pleadings. <u>White v. W. Title Ins. Co.</u>, 40 Cal.3d 870, 886 (1985); <u>Cal. Physicians'</u>, 9 Cal.App.4th at 1330.

OEA does not allege that Lloyd's filed its pleadings in bad faith or asserted bad faith affirmative defenses. Instead, OEA argues that Lloyd's is acting in bad faith by continuing to deny OEA's claim, apparently in reliance upon the other reasons stated in the original denial. There is no bar to this claim. Therefore, Lloyd's motion is DENIED as it relates to Lloyd's reliance upon the other reasons for denial after the Colorado Supreme Court overruled <u>Marez</u>.

C.  <u>Continuance</u>

OEA requests a continuance of the summary judgment motion under Fed.R.Civ.P 56(f). (Woolverton Decl. ¶ 2.) It argues that it should be accorded additional time to conduct discovery before the court decides Lloyd's motion for summary judgment because Lloyd's has failed to provide OEA with the information necessary to make out its claim of bad faith. (Id. ¶ 4.)

The court DENIES the motion because: (1) no additional evidence can change the reasonableness of Lloyd's 2001 denial; (2) the court denied Lloyd's motion as it related to Lloyd's conduct after Colorado adopted the notice-prejudice rule; and (3) OEA may conduct discovery on this latter issue until April 5, 2006.

### III.

For the reasons stated above, the court: (1) GRANTS Lloyd's motion as it relates to the April 18, 2001 denial; (2) DENIES Lloyd's motion as it relates to Lloyd's actions after the Colorado Supreme Court overruled Marez; and (3) DENIES OEA's motion for a continuance under Fed.R.Civ.P 56(f).

IT IS SO ORDERED.

Dated: 12/20/2005

_____
DAVID F. LEVI
United States District Judge

9